[Cite as *State ex rel. Zidonis v. Columbus State Community College,* 133 Ohio St.3d 122, 2012-Ohio-4228.]

THE STATE EX REL. ZIDONIS, APPELLANT, *v.* COLUMBUS STATE

COMMUNITY COLLEGE, APPELLEE.

[Cite as *State ex rel. Zidonis v. Columbus State Community College,*

**133 Ohio St.3d 122, 2012-Ohio-4228.**]

*Mandamus—Public records—R.C. 149.43(B)(2)—Denial of request for public*

*records as overbroad is proper when request seeks broad categories of*

*records covering lengthy period—Request is not specific merely because*

*the category of records it seeks is named in custodian's records-retention*

*schedule—E-mails—Courts are not authorized to order public agencies to*

*maintain records in manner that facilitates retrieval based on requester's*

*desired method.*

(No. 2012-0202—Submitted August 21, 2012—Decided September 19, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-961, 2011-Ohio-6817.

_____

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying the request of appellant, Sunday Zidonis, for a writ of mandamus to compel appellee, Columbus State Community College ("Columbus State"), to provide access to its complaint files, litigation files, and certain e-mails and to award statutory damages and reasonable attorney fees. Because the court of appeals did not err in denying the requested extraordinary relief, we affirm the judgment.

**Facts**

{¶ 2} Zidonis was employed by Columbus State from 1998 until May 2010, when her employment was terminated. From late 2005 through early 2008,

Zidonis was a member of the Columbus State records-retention committee. She attended meetings at which the records-retention policy was reviewed and discussed and offered input about records management in her work division. One of the committee's meeting agendas indicated that Zidonis would be gathering information for a taxonomy that would organize all inventories to make searching for records more efficient. From January 2007 to May 2010, Zidonis was the program coordinator for the academic-quality-improvement plan, which required her to develop effective communication methods and ensure that essential information and evidence were identified, stored, and communicated.

{¶ 3} After Zidonis's termination from employment with Columbus State, her counsel, who represented her in the appeal of her discharge in the State Personnel Board of Review, submitted multiple requests to Columbus State seeking access to various records under R.C. 149.43, the Public Records Act. Columbus State promptly provided access to nearly 400 pages of the requested records, including the personnel files of Zidonis and two other college employees. Zidonis also requested and received a copy of the college's records-retention schedule.

*Request for Copies of E-Mails*

{¶ 4} By letter dated June 30, 2010, Zidonis, through counsel, requested "[c]opies of e-mails sent between Sunday Zidonis and Deborah Coleman (i.e., those sent to Ms. Coleman from Ms. Zidonis, and those sent to Ms. Zidonis from Ms. Coleman)." By letter dated July 13, Columbus State, through its in-house counsel, Assistant Attorney General Jackie DeGenova, responded by specifying that the request was overly broad and that the college could not identify the specific records being requested. DeGenova invited Zidonis's counsel to contact her to assist in identifying the records being sought and to revise or clarify the request.

**{¶ 5}** Instead of replying to DeGenova as requested, Zidonis's counsel sent letters dated July 21 and August 9, 2010, to the vice president of human resources, asking him to describe "the nature by which staffs' electronic e-mails are stored at Columbus State and how they may be retrieved" so that a follow-up request could be made. On August 24, DeGenova sent Zidonis's counsel a letter reiterating that the request for copies of e-mails between Zidonis and Coleman was overly broad and that the college was unable to identify the records sought. DeGenova repeated her invitation to discuss the matter with Zidonis's counsel to assist in narrowing the request. He claims that he did call her, but the phone record he provided as evidence reflects a call to a phone number substantially different from the number DeGenova provided in her letter.

**{¶ 6}** On September 3, 2010, Zidonis's counsel sent DeGenova a letter in which he stated that after reviewing the Columbus State public-records retention policy, he assumed that "at some point, e-mails are printed off into paper form and then each printed e-mail is placed in the appropriate category within the [Columbus State] retention schedule."

**{¶ 7}** At a September 8, 2010 status conference in Zidonis's administrative appeal, DeGenova again advised Zidonis's counsel that the request for e-mails was overly broad and still needed to be revised to reasonably identify particular records. DeGenova informed Zidonis's attorney that the college retains, organizes, and accesses its records based on the content of the records and asked if he could narrow the request to more clearly identify the requested records by specifying the year or the subject matter of the e-mails. Zidonis's attorney replied that he would provide DeGenova with the requisite "names and dates" to narrow the scope of the e-mails he was seeking, but he did not do so.

**{¶ 8}** In mid-July 2010, i.e., around the same time that Columbus State first rejected Zidonis's request for e-mails between Zidonis and Coleman as overbroad, DeGenova discussed with the college's network administrator whether

it was technically possible to search for all e-mails sent between two employees. The administrator said that there were no such means in the normal manner of organizing, maintaining, and accessing electronic records at the college and that programming a special search would take a substantial amount of time. At DeGenova's request, the network administrator proceeded to recover the pertinent e-mails from the college's disaster-recovery system back to July 2008. In August and September 2010, the administrator created a special file and program for DeGenova to review the e-mails to make potential redactions, and DeGenova proceeded with her review.

*Request to Inspect Complaint and Litigation Files*

{¶ 9} In his September 3, 2010 correspondence, Zidonis's counsel asked "to look at records IUC-HR-10-04 (complaint files), and IUC-LEG-20-01 (litigation files)." The references in this request were to Inter-University Council of Ohio ("IUC") code designations listed in Columbus State's records-retention schedule. The schedule described "Complaint Files" as "[r]ecord[s] of staff or student grievances based on equal opportunity and affirmative action regulations," which are "arranged alphabetically." The schedule listed "Litigation Files," but did not describe them. Under the retention schedule, complaint and litigation files are to be retained for six years after they were last active.

{¶ 10} Although Zidonis's counsel asked whether there was a way "to look at these records for certain periods of time (e.g., over the past year)," he never revised the request to include a specific time period. Instead, Zidonis's counsel sent subsequent requests on September 14 and 22, 2010, in which he asked when he could come to Columbus State to review the requested complaint and litigation files. He emphasized in these requests that the "record retention period for these documents is six years from their active life."

{¶ 11} At the September 8 status conference in Zidonis's administrative appeal, DeGenova told Zidonis's counsel that she would respond to his records

4

request. DeGenova stated in a subsequent letter to Zidonis's counsel that she had informed him at the September 8 conference that Columbus State retains, organizes, and accesses its records based on content.

*Mandamus Case*

{¶ 12} In October 2010, Zidonis filed a petition in the Court of Appeals for Franklin County for a writ of mandamus to compel Columbus State to provide her with access to the requested complaint files, litigation files, and e-mail records. Zidonis also requested statutory damages and reasonable attorney fees.

{¶ 13} On November 3, 2010, Columbus State sent Zidonis's counsel a letter reiterating its denial of her request for all e-mails between Zidonis and Coleman as ambiguous and overly broad and stating that the college was "unable to reasonably identify the specific records, subject matter, time-frame or any other reasonable aspect of specificity by which to identify the e-mails." Columbus State noted that "each employee of the College has the ability to create documents and folders as part of the e-mail system and the particular records series to which the records belong, according to their individual needs. For example, if you request to review certain e-mails in the folders created by Ms. Zidonis or [her supervisor] Dr. Coleman, it is likely the College can search by this method. The College is unable to and is not required to provide access to entire record series or categories."

{¶ 14} Nevertheless, Columbus State provided with this letter a CD containing redacted copies of e-mails retrieved by use of the special program created at DeGenova's instructions to search for e-mails from Zidonis's and Coleman's computers. The CD contained approximately 200 e-mails and attachments, including 59 e-mails between Zidonis and Coleman in 2009.

{¶ 15} In this letter, Columbus State also denied Zidonis's request for complaint and litigation files as ambiguous and overly broad. DeGenova noted that she had previously provided Zidonis's counsel with a copy of the Columbus

State records-retention schedule as part of her explanation regarding how the records are maintained and accessed and that she was "unable to reasonably identify specific records which are being requested for this inspection and again, the College is unable to and is not required to provide access to entire record series or categories."

{¶ 16} Columbus State again offered in this letter to discuss the requests with Zidonis's counsel, but no further discussions were conducted.

{¶ 17} After the court of appeals denied Columbus State's motion to dismiss Zidonis's mandamus petition, the parties submitted evidence and briefs. In December 2011, the court of appeals denied the writ.

{¶ 18} This cause is now before the court upon Zidonis's appeal as of right.

### Analysis

#### *Mandamus*

{¶ 19} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). We construe the Public Records Act liberally in favor of disclosure of public records. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6. But the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

#### *Complaint and Litigation Files*

{¶ 20} Zidonis asserts that the court of appeals erred in denying the requested writ of mandamus to compel Columbus State to provide access to its

complaint files and litigation files on the basis that her request for these records was overbroad.

**{¶ 21}** Zidonis requested broad categories of records—complaint files and litigation files. The request covered a lengthy period of time—at least six years and potentially much longer, because for both records categories, she specified the college's records-retention schedule period of six years from when these files were last active. " '[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, quoting *State ex rel. Fant v. Tober*, 8th Dist. No. 63737, 1993 WL 173743, *1 (Apr. 28, 1993), *affirmed*, 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993). In identifying records for purposes of presenting a viable request, the Public Records Act "does not contemplate that any individual has the right to a complete duplication of voluminous files kept by government agencies." *State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 624, 640 N.E.2d 174 (1994), citing *State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 577 N.E.2d 444 (1989). In *Zauderer*, the court held that a request that a city police chief, county sheriff, and highway patrol superintendent provide access to "all traffic accident reports of record" was improper because it was "first, unreasonable in scope and, second, if granted, would interfere with the sanctity of the recordkeeping process itself." *Id.* at 756.

**{¶ 22}** This court has held that comparable requests for broad categories of records were overbroad. For example, in *State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 19, we examined a request for all the work-related e-mail messages, text messages, and correspondence of a state representative during her entire tenure. We held that the request was overbroad because it impermissibly sought what approximated a "complete duplication" of the representative's files. We so held even though the

representative had been in office for only six months when these records were requested. *Id.* at ¶ 4. And more recently, in *State ex rel. Dehler v. Spatny*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, this court held that a request for all records relating to a prison quartermaster's orders for and receipt of clothing and shoes for a period of over seven years was also an improper, overbroad request. *See also State ex rel. Davila v. Bellefontaine*, 3d Dist. No. 8-11-01, 2011-Ohio-4890 (request for all reel-to-reel tapes made for the entire 15 years that the recording system was in daily use was overly broad).

{¶ 23} Similarly, Zidonis's request, which sought whole categories of complaint and litigation files without any limitation as to content or time period, was overbroad as well.

{¶ 24} Zidonis asserts that her request was sufficiently specific because (1) she offered to narrow her request to inspect Columbus State's complaint and litigation files to shorter periods of time, e.g., over the past year, and (2) her request followed the language of Columbus State's own records-retention schedule.

{¶ 25} These assertions, however, lack merit. Although Zidonis's September 3, 2010 request asked whether there was a way to look at the requested records for specific, limited periods of time, she never revised her request to specify a shorter period than the retention schedule's six years from a file's last activity. *See State ex rel. Dehler v. Spatny*, 11th Dist. No. 2009-T-0075, 2010-Ohio-3052, ¶ 24 (rejecting as inadequate the requester's offer to limit a records request to the preceding three years because, inter alia, requester never indicated that he was actually modifying his request), *affirmed*, 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831. Instead, Zidonis reiterated in her September 14 and 22, 2010 requests that the "record retention period for these documents is six years from their active life," which was reasonably interpreted by Columbus State

to mean that Zidonis had not narrowed her original request to a shorter, more definite period of time.

{¶ 26} Moreover, the court of appeals correctly held that a "records request is not specific merely because it names a broad category of records listed within an agency's retention schedule." 2011-Ohio-6817, at ¶ 5. For example, the retention schedule for the administrative records of Ohio courts includes broad categories like "correspondence and general office records," "employee history and discipline records," "fiscal records," and "payroll records." Sup.R. 26.01(F), (J), (K), and (M). Requests for each of these record categories without any temporal or content-based limitation would likely be overbroad even though the categories are so named in the schedule. Manifestly, each request—and each retention category when the request is structured after such a category—must be analyzed under the totality of facts and circumstances.

{¶ 27} Therefore, the court of appeals properly denied Zidonis's request for a writ of mandamus to compel Columbus State to provide her with access to the requested complaint and litigation files because her request was overbroad.

*E-Mails*

{¶ 28} Zidonis next asserts that the court of appeals erred in denying her request for a writ of mandamus to compel Columbus State to provide her with copies of all e-mails between herself and her supervisor during her employment at the college. Zidonis claims that R.C. 149.43(B)(2) imposes a duty on Columbus State to maintain its e-mail records so that they can be retrieved based on sender and recipient status.

{¶ 29} R.C. 149.43(B)(2) provides that "[t]o facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section." Under R.C. 149.43(B)(1), "all public records responsive to the request shall be promptly

prepared and made available for inspection to any person at all reasonable times during regular business hours."

{¶ 30} R.C. 149.43(B)(2) does not expressly require public offices to maintain e-mail records so that they can be retrieved based on sender and recipient status. " 'It is axiomatic that in mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus.' (Emphasis deleted.)" *State ex rel. Patton v. Rhodes*, 129 Ohio St.3d 182, 2011-Ohio-3093, 950 N.E.2d 965, ¶ 17, quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 18; *see also State ex rel. Bardwell v. Cleveland*, 126 Ohio St.3d 195, 2010-Ohio-3267, 931 N.E.2d 1080 (court of appeals was not authorized to create duty on the part of the city and its police chief to require pawnbrokers to submit certain reports on regular paper rather than on index cards when there was no such requirement under R.C. 149.43(B)(2)). While it may be preferable for public offices to include a program that would permit easier searching of work-related e-mails based on sender and recipient—which Columbus State eventually did here to retrieve pertinent e-mails responsive to Zidonis's request—we cannot require that they do so when R.C. 149.43(B)(2) does not require it.

{¶ 31} Zidonis's citation of *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, to support her claim is misplaced. The responding agency in that case made no claim that the request for e-mail records was overbroad. Instead, our holding was limited to the appropriate factors for determining when a public office has a duty under R.C. 149.43(B) to recover and provide access to e-mails that were unlawfully deleted. *Id.* at ¶ 19. There is no issue in this case relating to deleted e-mails, and *Toledo Blade* is irrelevant.

{¶ 32} Therefore, the court of appeals did not err in denying Zidonis's request for e-mails based on her claim that Columbus State had violated R.C. 149.43(B)(2) by not initially organizing its records so that work-related e-mails could be retrieved based on sender and recipient status. The mere fact that the court of appeals' denial may have been premised on an incorrect rationale[1] does not require a different result. *In re G.T.B.*, 128 Ohio St.3d 502, 2011-Ohio-1789, 947 N.E.2d 166, ¶ 7 ("we will not reverse a correct judgment simply because it was based in whole or in part on an incorrect rationale").

*R.C. 149.43(B)(2) Requirement to Inform Requester*

*of the Manner in which Records are Maintained and Accessed*

{¶ 33} R.C. 149.43(B)(2) requires the office or person responsible for public records, when faced with an overbroad request, to "provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." Zidonis claims that the court of appeals erred in failing to find that Columbus State violated this requirement with regard to her requests for complaint files, litigation files, and e-mails between herself and her supervisor. *See, e.g., State ex rel. ESPN, Inc. v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 11.

{¶ 34} For the following reasons, however, the court of appeals did not err in rejecting Zidonis's claim.

{¶ 35} First, there is evidence that Columbus State explained at a September 8, 2010 status conference in Zidonis's administrative appeal, which

---

1. The court of appeals concluded that Zidonis's request for e-mails was improper because she did not "identify e-mails related to the organization, function, policy, decision, procedures, operation or work-related activity" of Columbus State. 2011-Ohio-6817, at ¶ 11. Zidonis correctly observes that a request for e-mails that does not specify that it seeks "work-related" e-mails is not necessarily defective. And Columbus State is simply wrong in arguing that an "e-mail does not become a public record when it appears on a server in a public office" and that e-mail becomes a public record only when it is placed in an electronic subject-matter folder or is printed on paper.

was about a month before she filed her public-records mandamus action, that the college retains, organizes, and accesses its records based on content.

{¶ 36} Second, before Zidonis requested the college's complaint files, the college provided her with a copy of its records-retention schedule, which defined these files as records of "staff or student grievances based on equal opportunity and affirmative action regulations" with the "[f]iles arranged alphabetically."

{¶ 37} Third, Zidonis's counsel indicated in the record requests that he understood how the requested e-mails were maintained and accessed. For example, in the September 3, 2010 request, Zidonis's counsel stated that based on his review of the college's records-retention schedule, he assumed that e-mails are printed onto paper and then each printed e-mail is placed in the appropriate records category in the retention schedule. And her counsel ultimately revised a comparable request for e-mails between Zidonis and a different college employee to limit the request to a specific time period and subject-matter, with the result that the college was able to produce several responsive records.

{¶ 38} Fourth, from her prior employment, Zidonis already had knowledge of how the college maintained and accessed certain records. *State ex rel. Vaughn v. Money*, 104 Ohio St.3d 322, 2004-Ohio-6561, 819 N.E.2d 681, ¶ 11 (mandamus will not lie to compel a respondent to give the relator something he already has).

{¶ 39} Fifth, notwithstanding Zidonis's failure to pose a viable request, Columbus State proceeded to create a program to search for the requested e-mails and ultimately provided copies of them to her.

{¶ 40} Finally, Zidonis ignored Columbus State's multiple invitations to contact its in-house counsel to help Zidonis refine her overbroad requests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 18 ("R.C. 149.43 contemplates that the requester and the public-records custodian cooperate in fulfilling a request").

12

**{¶ 41}** Consequently, the court of appeals did not err in determining that Columbus State had complied with R.C. 149.43(B)(2).

**Conclusion**

**{¶ 42}** Based on the foregoing, Zidonis did not establish by the requisite clear and convincing evidence that Columbus State violated R.C. 149.43 by denying her record requests. Therefore, we affirm the judgment of the court of appeals denying the requested extraordinary relief in mandamus.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

James J. Leo Law Office, and James J. Leo, for appellant.

Michael DeWine, Attorney General, and Jeffery W. Clark and Holly LeClair, Assistant Attorneys General, for appellee.

_____